Our second case today is City of Springfield v. Galloway. That's case number 4110647. For the appellant, Jeffrey Sorensen. For the appellee, Barry Hynes. Mr. Sorensen. May it please the court and counsel, my name is Jeff Sorensen. I represent the City of This case was initiated to quiet title to a parcel of real estate that the City of Springfield purchased in 1974. When the City purchased this property, it obtained a warranty deed from Gordon and Pauline Galloway and entered into a purchase agreement pursuant to which the Galloways agreed to give fee simple title to the City for this parcel that was going to be used for the development of a reservoir in the City of Springfield. The purchase price was slightly over $88,000 and the City paid one quarter of the purchase price to Gordon and Pauline Galloway and three quarters of the purchase price to the defendants in this action. However, the City did not obtain deeds from the defendants who owned the remainder interest under the will of Thomas Jones, which is outlined in our brief. The defendants entered into a family settlement agreement in 1976 to confirm, ratify, and settle prior oral agreements that they had entered into amongst themselves and with their parents regarding the distribution of proceeds from the sale of the real estate, including the sale of the parcel to the City of Springfield. The City brought the quiet title action because in 2008, one of the defendants inquired about the right to repurchase the property and that led to exchange of correspondence and the ultimate filing by the City of the quiet title action. The issues before the Court today are really, there are four issues, but I grouped them in bundles of two. The first concerned the granting of summary judgment to the defendants in this case, the denial of summary judgment to the City. And then the second issue concerns the rights granted by the trial court to the defendants concerning what we have characterized as the right of first refusal. That right of first refusal arises from paragraph seven of the purchase agreement, which provided that in the event Lake Springfield 2 did not become a reality and the City elected to dispose of the property, the seller, who was defined in that agreement as Gordon and Pauline Galloway, shall have the first option to purchase the property for $88,000. So the second group of issues is whether the Court erred in granting the right of first refusal to the Galloways and did it err in expanding that right by $88,000. With respect to the summary judgment issues, I think you're concluding or you're conceding that there are no disputed issues of factor? There are no disputed issues of factor. And that's the position of the other side as well? I believe so. We've crossed motions for summary judgment. Okay. With regard to the summary judgment ruling by the trial court, the procedural posture of the case I think is important to that analysis. The summary judgment, or I'm sorry, it's a complaint for acquired title based on the fact that it had acquired fee simple title pursuant to the deeds given by Gordon and Pauline Galloway that in any event had acquired whatever fee ownership interests the defendants had through adverse possession. Gordon Galloway was the remaining, the last life tenant. He passed away in 1983. And from 1983 through 2008, more than 20 years, the city exercised unfettered and uncontested ownership of the property. It paid the taxes. It leased the property. In her deposition, Marie Galloway Marvin testified that they never exercised any ownership rights with respect to the property because they understood that the city owned the property. Can a grantor who only has a life estate give fee simple title in a deed? Your Honor, I don't believe that a grantor can grant greater rights than they have. However, I think you have to look as well at the family settlement agreement, which is an undisputed fact in this case. So you're saying I look outside of the deed itself to determine what was actually conveyed? In this case, you do. Because again, the defendants in this case had the remainder interest under the will of Thomas Jones. But they consented in the family settlement agreement to the sale of the property and the distribution of the assets. So I would say that at a minimum they waived any claims that they had to fee simple absolute when they ratified what their parents had done and the way the proceeds from the sale of the property had been distributed. Well, if the deed conveyed the interest of the remainder men, aren't the remainder men entitled to a right to repurchase? Well, the remainder men did not sign the purchase agreement. So what we're arguing is that the purchase agreement reflected a very narrow right of repurchase by the sellers. And the sellers were defined in the purchase agreement as Gordon and Pauline Galloway. And one of the arguments that the defendants made in their summary judgment motion was that it would be inequitable for them to lose fee simple title to the property without receiving the purchase repurchase rights that are set forth in paragraph seven of the agreement. And there's nothing inherently inequitable about limiting the right of repurchase to Gordon and Gordon Galloway during his lifetime. And there are many reasons for that. If Gordon Galloway was the exclusive holder of the right to repurchase, then upon his death the property and he exercised prior to his death, upon his death he could convey the property in accordance with his estate plan. Whereas if the right was also held by the defendants, in that event the defendants would have fractional interest. If one of the defendants died prior to the exercise of the repurchase right, then you would have issues with whether that interest would be passed on to the heirs and devisees of that defendant or whether the remaining two defendants would have the only right to repurchase. So in terms of contract analysis, the city made a deal with the Galloways, Gordon and Pauline, that they would have the right of repurchase. And there's nothing inequitable in selling a piece of property and saying that the right of repurchase is limited to this grantor and all grantors don't necessarily have to receive it. That wasn't what it said. It didn't say it was limited to the grantor. It seems a little inconsistent to me for you to say we, the city, acquired the property under the deed and family settlement agreement, but the provision in the family settlement agreement doesn't apply to the remainder. There's no extrinsic evidence. We get the remainder's interest, but the right of repurchase doesn't apply to the remainder. Again, one, I think, very fair way to interpret that agreement is to say that the right of repurchase is not going to be an indefinite right. Parties are free to contract in any way they see fit. There's nothing contrary to public policy in this case about limiting the right of repurchase to the holders of the life estate and not granting it to the seller. And there is no extrinsic evidence offered in this case. None of the defendants testified or offered any affidavits establishing that there were negotiations with the city that they were intended to receive the right of repurchase set forth in paragraph 7 of the Purchase Agreement. It says the seller is good at it, doesn't it? But the sellers defined in the agreement is Gordon and Pauline Galloway. But you're saying the sellers are the remainderment, too. That the remainderment's interest was conveyed as part of the deed. We are saying that, yes. But again, I think if they had come forward, the defendants had offered some evidence that there were negotiations, that the intent of the parties was that the defendants would have the right to repurchase, then that would be, I think, a better argument on their behalf. But to simply say it's inequitable for the defendants to not receive the right of repurchase, I do not believe that that is a true argument. Because there are many ways in which this property could have been sold and the right to repurchase divided up or limited, either temporarily or with respect to who had the right to repurchase. And I think the defendants' weakness in their argument is that there is, again, nothing inherently inequitable in granting a very limited right to repurchase and granting that only to the Galloways. The issue of summary judgment turns to on the procedural posture of the case, which defendants in this case filed an answer denying that the city had fee simple title to the claim, asserting that the only way the city could acquire their fee simple interest and their repurchase right that they asserted they had under Paragraph 7 was by exercising eminent domain authority. So when we filed this case, they were denying that the city had any rights whatsoever, yet in the course of the depositions, Ms. Marvin, for example, admitted that the city owned the property and that the issue was really only their right to repurchase under Paragraph 7, which was the subject of their affirmative defense. They filed an affirmative defense that asserted that if the city owns fee simple title, that it is then subject to their equitable right to enforce Paragraph 7 of the purchase agreement. And we believe that we established as a matter of law that the city does hold fee simple title to its property. And then the issue becomes whether the defendants have a right to repurchase under Paragraph 7 and the scope of that right. But there's no dispute here, Your Honors, and the trial court therefore should have granted summary judgment to the city on the city's claim that the city held fee simple title to the property, either pursuant to the purchase agreement or through the doctrine of adverse possession. None of the factors concerning adverse possession were contested in this case, and the city established that it's right to summary judgment on that issue by the evidence in the case and the record in the case that was presented to the trial court. What did the trial judge say in rejecting the adverse possession argument? The order was really silent on that issue. You lose? Essentially. We lose and the defendants win. And I think the court, interpreting the order, believed that the equitable argument, but still I think the appropriate, even if the court agreed with that, which it did, the appropriate thing would have been to, or appropriate ruling would have been to grant the city's motion and then grant the defendant's motion on its affirmative defense. But the court denied our motion, essentially denying our claim that we had fee simple title, and we believe that that was an error and inconsistent with the undisputed facts in the record. With respect to the court's ruling on paragraph seven, and ruling that the defendants have an equitable right to enforce that, I've just presented my arguments on that issue. Again, there's nothing inherently inequitable about limiting the repurchase right to the lifetime of Gordon and Pauline Galloway. So we don't believe that as a matter of law the court should have granted the defendants relief and granted them paragraph seven repurchase rights. But the court not only granted those rights, the court expanded those rights beyond what was set forth in the purchase agreement. In paragraph seven of the purchase agreement, it simply says that if the city elects to not proceed with the reservoir project and elects to dispose of the property, the Galloways will have the right to repurchase the property for $88,000 of what they sold the property to the city for in 1974. The purchase agreement says nothing about that right to repurchase running with the land. And it says nothing about that repurchase right being enforceable by Gordon and Pauline Galloway's heirs and devisees. But that is what the court grafted onto the purchase agreement when it ruled that. It doesn't say one way or the other, does it? It doesn't. It doesn't. And the absence of the heirs and devisees and the absence of the running with the land, in my view, your honor, means that the purchase agreement provides that it's a personal right to Gordon and Pauline Galloway. And that it does not run with the land. It is not enforceable by their heirs and devisees. And that was essentially the holding of this court in the Kellner case, which we cited in our brief. And the Kellner case held that, essentially, there was a right of repurchase. And a right of repurchase is personal to the parties. And there was language in that case that the right of repurchase was enforceable by heirs and devisees. The court said that's irrelevant. It's a right of first refusal. And therefore, it is personal to the parties, to the agreement, and does not pass down to their heirs and devisees. So the other issue with respect to running with the land is there's, I believe, an inherent lack of logic in saying that this right of repurchase runs with the land. This right of repurchase is only exercisable if the city chooses to not proceed with the city, with the Lake Springfield 2 project, and decides to dispose of the property. In that event, they have an obligation to allow the defendants to purchase the property for $88,000. If they don't exercise that right, the defendants, and the city sells the property to some third party, if the covenant runs with the land, that means binding upon subsequent grantees and purchasers. So what the trial court has essentially done with its ruling, that the covenant runs with the land, is say that even though the defendants may choose not to exercise their right to repurchase in the event that the conditions of precedent are met, the covenant is still binding upon whomever the city then chooses to sell the property to. Which makes no sense because presumably, if the city sells the property to a third party, the third party is not purchasing the property for purposes of constructing a reservoir. So in that event, the purchaser would have an obligation potentially to sell the property. You're saying if we apply this to the city, then it's going to apply to whoever the city sells it to, and whoever that person sells it to, etc.? We're saying that that is what would happen if the court allows the trial court's decision that the paragraph 7 rights run with the land, if the court allows that to stand, yes, then it's binding upon any subsequent purchaser. That is what it means for a covenant to run with the land, that it's binding upon subsequent grantees and purchasers of the property. So when the trial court rules that the covenant is running with the land, then it's saying that if the city grants the right to repurchase to the defendants, the defendants choose not to exercise it, and then the city sells the property to a third party, that right to repurchase is still binding upon the third party. So in theory, that right to repurchase would never expire. It would continue to run through subsequent sales, and that every heir of the Galloway family of the defendants would continue to have a right to repurchase the property from subsequent grantees. The other issue that we would address with respect to the trial court's ruling concerning the scope of paragraph 7 is the trial court's ruling that the paragraph would be enforceable by the defendant's heirs and devisees. And again, I think this takes us back to the Kellner case. In the Kellner case, the court said that with respect to a right of first refusal, the inclusion of the words heirs and devisees doesn't add anything. A right of first refusal is personal, if it's unlimited in time, as this right of first refusal is, it's personal to the parties to the agreement, and is not something that flows to the grantees' heirs and devisees. So again, we have issues with respect to 30 years down the road, if the city has not built the reservoir, and they decide at that point that they're no longer going to pursue this and that they want to dispose of the property, they then have an obligation to track down all of the heirs and devisees of the Galloway family. And not only do you think that the heirs and devisees language is... When this deal was made, the city's attorney recommended that you get signatures not just from the originals, but from the remainder, didn't he? That's right. So couldn't that have been done? It could have been done. There's nothing in the record explaining why it wasn't done, and the reason for that is this transaction occurred 37, 38 years ago. If you could have gotten signatures from the remaindermen, why are we speculating on heirs and devisees years and years down the road, at all? These people were in existence at the time the transaction was made. Well, the heirs and devisees issue goes to the right of repurchase. I think what... So the issue isn't having to go out 30 years from now and get deeds from the heirs and devisees, because this quiet title action will resolve the issue of whether the city has good title. And then the issue becomes whether that title is subject to repurchase rights under paragraph 7 of the purchase agreement, and who has the right to enforce those repurchase rights. Thank you. Thank you. You'll have rebuttal. Mr. Hines. Your honors, counsel, may it please the court, I'm Barry Hines, counsel for the Appalese. We never did seek, your honors, to get paid again for this land. What we sought was merely an affirmation of the fact that my clients did have a right that their father sought or bargained for to be able to repurchase this land in the event that the city of Springfield decided that they were not going to pursue the building of Lake Springfield II. And my client, Marie, when she went down to the city offices to seek affirmation that that was a record and found out that no, that they did not have that right, that's what started this. And the city filed a quiet title action because the city found out that they did not have a fee sample title to the real estate. And they indeed are here because they do not have a fee sample title. It's not clear to me why the city's claim for adverse possession doesn't work. And I looked at your brief, and your brief frankly doesn't make it clear to me either why that shouldn't work. Well, Your Honor, I would respectfully submit that the plaintiff has given up on that, and they did that in their reply brief. If you look at their reply brief, in the last paragraph of their reply brief, they concede that they are not asserting the adverse possession, except in the very remote fact that if, in fact, we get to the point where the city does announce that they have abandoned the lake, Springfield project, and then the actual right under the contract, the paragraph 7 right, is triggered, then they do have the right to assert the adverse possession at that point in time. But at that point in time... Counsel, let me ask it this way. I'm not sure I read it that way. It seems to me the city is asserting alternative positions in support of its claim. Yes. One position that we've talked about, and the second position is adverse possession. Why isn't the adverse possession claim a sound one? Because they entered, first of all, they entered into possession peacefully. They got a deed from a live tenant, so they did have a right to possession. That was one thing that Gordon Galloway could give them, the right to possession, because he was a live tenant and he had the right to possession. He could give that to them. So they entered into possession peacefully. Now, when he died, they were still there. They'd entered the ground peacefully, so they were in possession. So someone had to go in and oust them from possession. Well, when he dies, the possession becomes hostile under the case law, correct? I don't know that unless someone challenges his possession, does it become hostile. Well, if it does, and I think there's a case law that says that it does become hostile, then the city would have established for 20 years, correct? Yeah. But my clients have, in effect, not made that possession hostile. Well, if an entity takes possession from a live tenant, but then dies, and the entity, person, city, whatever, just stays, sits there and holds on to the property, what else are they supposed to do that would achieve adverse possession status 20 years later? Okay. What's missing? Well, they paid for the property. Okay. And why isn't there then a failure of consideration? Well, then I'm talking about a life estate. The guy dies. Yeah. Now they're there through no claim of title, because the person had only conveyed the life estate he had. Now he's dead and they stay. Isn't that an adverse possession? And if they stay there for over 20 years openly, notoriously hostile to whoever owns the property, because they're acting as if they're the owners, what part of adverse possession doesn't apply? Well, I've got cases I can cite to you, the Leonard v. Leonard case, which says if you enter and you don't have a disclaimer of that yourself, the city didn't disclaim that openly and say, okay, now we are here, and we disclaim the initial entry peaceably. We're now here and post signs, do something, and say, now we are taking this property. So you mean the person, the entity? They have to take some sort of postage paper, do something, and say, okay, remainderman, we're taking this contrary to your ownership. What if the city mowed it, mowed the property? Would that be hostile? If you read Leonard v. Leonard, they're talking about something more than just mowing, in my mind. Mowing is a passive activity. I don't understand that. I could understand your argument if the city or if these people gave permission to the city to enter the property and use it, then it would not be hostile. But if they give the city nothing and the city just uses it as their own, why isn't that an adverse position? How does that destroy the fact that there was this agreement that the city was going to pay or was going to, part of the consideration was that if they abandoned Lake Springfield II, they were going to give them the opportunity to buy this property back. That's the part that I have trouble with. They have the right to be there. They paid originally to be there. But how does that adverse possession destroy this additional consideration? It's like... But you argue the city got no rights under the deed. No, we're not saying they got no rights. We're not contesting the fact that they have the right to be there. At all points, we've been willing to give them a deed. We've been willing to give them a deed. We just want to put in that deed a reservation of our right that we have the right to buy that property back if they do not build Lake Springfield II. But if the city has it by adverse possession, then none of the other arrangements count. Isn't that right? Yeah, if it's by adverse possession, then they don't need our deed. So what defeats their adverse possession claim? I don't think that they should be able, by adverse possession, to defeat that consideration. They paid consideration. They went in peaceably. They bought a life estate. They keep going back. Sure, they paid consideration. They bought a life estate, and that was it. And after that, they're just there. They're squatters. They're acting as if it's their property. Sounds like evidence. They gave the adverse possession to me 20-plus years later. Well, there's where this is an unusual case. They also gave my three clients a check. And somehow... That was like 30-some years ago, wasn't it? Yeah, 30-some years ago. But your position is they didn't get anything more than a life estate. Conceding they got anything more than that, did they? Well, I'm an attorney. I've got to cover my clients every which way I can. I understand. And they need a deed, and they're saying, Look, you guys, we want our cake, and we want to eat it, too. You don't have the right to buy the property back, because we changed the rules that we play by. We're not letting people... We made these deals, but we don't want to live by those rules anymore. But they never got the deed. Your clients never gave them the deed. We never gave them the deed. Okay, now, it's not that they changed the rules. They messed up. You forgot to get it, but after all, it was your clients who could have said, By the way, you forgot. Here's the deed. We're supposed to give you for that money. They never got it. Isn't that right? I mean, they're making the city sound like a bad guy. The city is the one who, through their errors of omission here, They weren't trying to trick anybody. Well, we're just as surprised. My clients didn't... They didn't know. They didn't give them the deed. Well, but somebody... Let's say I got this chunk of cash for this deed that I've never delivered, and maybe they forgot. Maybe they should call up and say, Don't you want my deed? Shouldn't I send this off to you? Yeah. But when they're not going to recognize the buyback, I mean, this is a pioneer family, and this was an important aspect, getting this land back. After all, this was under threat of condemnation. This was not a voluntary deal. So, you know, the city made a bargain. They don't want to live by the bargain. Well, this was a court of equity. We went into a court of equity, and we asked the court... Counsel, it's true that the original deed warranted good title, and they didn't have good title. They had a life estate. Right. So...